166 P.2d 141

**STATE v. HASTON.**

No. 959.

Supreme Court of Arizona.

Feb. 18, 1946.

George D. Locke and Terrence A. Carson, both of Phoenix, for appellant.

John L. Sullivan, Atty. Gen., and Earl Anderson, John W. Rood, and Burr Sutter, Asst. Attys. Gen., for appellee.

STANFORD, Chief Justice.

Defendant was charged by information with the commission of eight felonies designated by eight counts. Count No. 1 charges the crime of incest was committed on or about January 15, 1945, with Anna Bell Haston, fourteen years of age, daughter of defendant. Count No. 2 charges the crime of incest January 18, 1945, with the same person, Anna Bell Haston. Count No. 3 charges the crime of assault with intent to commit rape on or about December 18, 1944, with Maxine Haston, eight years of age, daughter of defendant. Count No. 4 charges the crime of assault with intent to commit incest on or about December 18, 1944, with said Maxine Haston. Count No. 5 charges the crime of assault with the intent to commit rape on or about July 1, 1942, upon Helen Garrett, fourteen years of age, daughter of defendant. Count No. 6 charges the crime of assault with the intent to commit incest on or about July 1, 1942, with said Helen Garrett. Count No. 7 charges the crime of statutory rape on or about January 15, 1945, with said Anna Bell Haston. Count No. 8 charges the crime of statutory rape on or about January 18, 1945, with said Anna Bell Haston.

The law of our state relating to certain offenses charged in the information is as follows:

Sec. 43-405, A.C.A.1939, relates to a person who may be guilty of the crime set forth in counts 1, 2, 4 and 6: "Incest.—Persons being within the degrees of consanguinity within which marriages are declared by law to be incestuous and void, who intermarry with each other, or who commit fornication or adultery with each other, are punishable * * *."

Sec. 63-107, A.C.A.1939, in reference to prohibited and void marriages is as follows: "The marriage of persons of Caucasian blood, or their descendants, with Negroes, Hindus, Mongolians, members of the Malay race, or Indians, and their descendants, shall be null and void. The marriage between parents and children, including grandparents and grandchildren of every degree, between brothers and sisters of the one-half as well as of the whole blood, and between uncles and nieces, aunts and nephews, and between first cousins, are incestuous and void. Children born out of wedlock, or the relations thereof, are included within the prohibition."

Counts 3, 5, 7 and 8 are based on the following part of Sec. 43-4901, A.C.A. 1939:

"Rape defined—Age limitation * * *. —Rape is an act of sexual intercourse accomplished with a female, not the wife of the perpetrator, under any of the following circumstances:

"Where the female is under the age of eighteen (18) years; * * *."

The statement of other circumstances under which rape may be committed are omitted as having no bearing on this case, the charge here being what is known as statutory rape, the act having been committed with a female person under the age of eighteen years and our law is that such a person does not have to resist, for our state resists for her.

The jury in this case returned a verdict against the defendant finding him guilty of all of the counts charged in the information. From the judgment of conviction and sentence rendered in the superior court, defendant has appealed to this court.

Defendant submits nine assignments of error covered by his following propositions of law:

"1. A conviction and sentence for statutory rape cannot be sustained upon the uncorroborated testimony of the prosecutrix where her story is so impossible and incredible that no reasonable man could believe it.

"2. Every person accused of an offense is entitled to a fair and impartial trial, conducted impartially and without bias and prejudice.

"3. Under the Constitution of the State of Arizona, and of the United States of America, the defendant has a right to know the nature of the accusation against him. This right requires that the offense be charged with clearness and all necessary certainty to apprise the accused of the crime of which he stands charged.

"4. Evidence of other crimes, not connected with the crime charged, may not be offered by the prosecution in a criminal case. Such action on the part of the state contravenes and constitutional provisions requiring that every person accused of a crime be given a fair and impartial trial."

Counts 1, 2, 7 and 8 of the information have to do with the commission of the crimes of incest and rape with Anna Bell Haston. The time of the commission of the offenses of incest is also the time alleged when the offense of rape was also committed.

The evidence shows that Anna Bell Haston had left the home of her parents near Eloy, Pinal County, Arizona, and gone to Phoenix and from there to Prescott. She left the home about the 20th day of January, 1945, and the testimony shows that she left because of the treatment of her by her father. In testifying in the trial court as to the offenses alleged to have been committed, both incest and rape, on or about the 18th day of January just before she left home, the witness stated that her father sent her little sister to a store and she was in the house with him; that he went to an automobile and got a small rope and tied her across the bed, "and then he had the advantage of me. And then he told me if I ever told, it would be my life." She further testified:

"Q. Now, do you know the meaning of the word 'sexual intercourse,' Anna Bell? A. I do.

"Q. Did he commit an act of sexual intercourse with you? A. He certainly did."

As to the offenses of both incest and rape alleged to have occurred on or about the 15th day of January, 1945, the said witness, Anna Bell Haston, who had testified that she was fifteen years of age, further testified as follows:

"That time my little brother was playing out in the yard, and he came in to the house, and Daddy made him go back out and play, and he, I told him first, I said, 'I am going out and play with him.' He said, 'No, you are not going out and play with him.' He would not let me go out and play. And he grabbed my arm and threw me down, and he said, first pulled my dress up, and I told him I wasn't going to pull it up, and he pulled it up anyway, and I slapped him and he knocked me down. Then he tied me to the bed and had advantage of me.

"Q. Now, did he at that time and place have sexual intercourse with you? A. He certainly did."

The witness also testified acts of sexual intercourse were had with her by her father in the State of Oklahoma before they moved to Arizona, and other times in Arizona.

Dr. Glen H. Walker, a physician and surgeon, testified that he examined Anna Bell Haston about the 15th day of February, 1945, and testified that her condition was that of a female who had indulged in acts of sexual intercourse.

In our case of Power v. State, 43 Ariz. 329, 30 P.2d 1059, 1060, we said: "It is the general rule that, in prosecutions for illicit intercourse of any class, evidence is admissible of sexual acts between the same parties, prior to the date of the specific act charged, notwithstanding that such evidence may tend to prove the commission of a separate and independent crime. * * *"

The trial court took the precaution by an instruction in respect to other crimes, stating: "You are instructed that evidence of crimes other than those charged in the information, if you find and believe that such crimes were committed by the defendant, are admissible for the sole purpose of showing a system, plan and scheme of the defendant and to prove the lustful and lascivious disposition of the defendant and as having a tendency to render it more probable that the acts and attempted acts of sexual intercourse charged in the information were committed on or about the dates alleged, and for no other purpose."

This is a case where the crime of rape alleged could not be committed without the commission of the offenses of incest. The point made by defendant that the prosecuting witness, Anna Bell Haston, did not make known soon after the offense occurred that the crimes were com-

mitted is well treated in our opinion of Levy v. Territory, 13 Ariz. 425, 115 P. 415, 416. This was a case of statutory rape. In that opinion we said: "* * * The fact that the victim of an outrage makes complaint is admitted in evidence to corroborate her testimony that she did not consent, and if no complaint is made that fact may be considered in determining her credibility upon that point. Of course, the reason for the rule wholly fails in a case like the one before us, where no question of consent is involved. * * *"

The commission of the crime of rape in the instant case necessarily carries with it the commission of the crime of incest and in support of that statement we quote from State v. Warner, Utah, 291 P. 307, 309: "* * * The undoubted weight of modern authority is that to show a completed sexual offense it is not essential to show an emission, whether the offense be rape, adultery, incest, or other carnal knowledge. * * *"

The complaint of defendant that the conviction in this case cannot be sustained on the uncorroborated testimony of the prosecutrix is determined by our case of State v. Pollock, 57 Ariz. 415, 114 P.2d 249, 250, in which we said: "The first question is as to the sufficiency of the evidence to sustain the verdict. The prosecutrix testified directly and positively to the completed crime. Defendant denied that he had either attempted or completed the offense charged. If this were all, the question would undoubtedly be one for the jury, for in Arizona in a case of this kind a conviction may be had upon the uncorroborated testimony of the prosecutrix, unless her story is physically impossible, or so incredible that no reasonable man could believe it. Reidhead v. State, 31 Ariz. 70, 250 P. 366; Zavala v. State, 39 Ariz. 123, 4 P.2d 390."

Also in the opinion written on motion for rehearing in our case of State v. Guldin, which is reported in 63 Ariz. 223, 161 P.2d 121, the opinion on rehearing being reported in 63 Ariz. 411, 162 P. 2d 907, Justice Morgan said: "* * * I am satisfied that the statement in the majority opinion, that a defendant in a case of this character may be convicted on the uncorroborated testimony of the prosecutrix, is correct. Her story of the act did not disclose its physical impossibility, nor was it so incredible that no reasonable person could believe it. State v. Pollock, 57 Ariz. 415, 114 P.2d 249; Reidhead v. State, 31 Ariz. 70, 250 P. 366; Zavala v. State, 39 Ariz. 123, 4 P.2d 390. This has to be the rule. Otherwise many offenders would go unpunished. Acts of the character involved here are performed secretly, without the presence of witnesses. The character of the act affords little opportunity, in most cases, for corroboration. Men do not advertise acts of this kind. The competency of the child to testify, as pointed out in the dissent, rests in the discretion of the trial court. Sheek v. State, 19 Ariz. 509, 172 P. 662; Keefe v. State, 50 Ariz.

293, 72 P.2d 425. The case was for the jury."

■ We have treated on all matters referred to by the defendant except the one referred to in his third proposition of law, which evidently goes to the matter of the complaint charging on many counts different offenses. Sec. 44-725a, A.C.A.1939, is as follows: "Charging two or more offenses or same offense in different counts—Order to consolidate—Election by prosecution—Separate trials—Effect of acquittal on one or more counts.—An indictment, information, or complaint may charge two or more different offenses, connected together in their commission, or different statements of the same offense or two or more different offenses of the same class of crimes or offenses, under separate counts, and if two or more indictments or informations are filed in such cases the court may order them to be consolidated. The prosecution is not required to elect between the different offenses or counts set forth in the indictment or information, but the defendant may be convicted of any number of the offenses charged, and each offense upon which the defendant is convicted must be stated in the verdict; provided, that the court in the interest of justice and for good cause shown, may, in its discretion, order that the different offenses or counts set forth in the indictment or information be tried separately, or divided into two or more groups and each of said groups tried separately. A verdict of acquittal of one or more counts shall not be deemed or held to be an acquittal of any other count."

■ The case of State v. Pierce, 59 Ariz. 411, 129 P.2d 916, 917, handed down by this court after the enactment of the section above mentioned is one where defendant was informed against for contributing to the delinquency of a minor and six separate counts were in the information. In that case we said:

"We have very recently had before us the question of the validity of chapter 8, supra, and in the case of Burney v. Lee, 59 Ariz. 360, 129 P.2d 308 (just decided but not yet reported (in State reports)), we have held that as a result of such statute the legislature has withdrawn from the field of court procedure, and that unquestionably since said withdrawal the court has the indisputable inherent power of adopting such procedural rules as it thinks proper for the conduct of judicial business, both criminal and civil.

"Counsel for defendant has not suggested any manner wherein the rule authorizing the joining of two or more different offenses of the same class of crime under separate counts violates any substantive right of defendant, and we can think of none. The method of trial of a defendant in a criminal case, as in a civil, is procedural and not substantive, and in the absence of a specific constitutional provision affecting the matter, may be regulated by rules of court. The first assignment of

error is without merit. Burney v. Lee, supra."

The trial court in its instructions gave many forms of verdict to the jury including a form for every offense, and also included a form of verdict for guilty of all offenses. The jury found the defendant guilty of all counts in the information. After instructions the court asked counsel if there were any objections and the counsel for defendant said he had none.

■ As to the counts herein mentioned, counts 1, 2, 7 and 8, the court finds that the defendant was given a fair and impartial trial and that no error was committed by the trial court and in all respects this court affirms the trial court's judgment of conviction in respect to said four counts.

Count 3 charged the defendant with assault to commit rape on his daughter, Maxine Haston, on or about December 1, 1944, and count 4 charged the crime of assault with intent to commit incest with her on or about the same date.

■ The crime of assault is included in the crime of assault with intent to commit rape or incest. The testimony of Maxine Haston was to the effect that she was eight years of age. Her evidence was very brief, and, in part, is as follows:

"Q. Now, will you tell the jury what, if anything, took place between you and your father some time last December before Christmas. A. He made me pull off my pants and put his finger in. Then he tried to put his thing in.

"Q. Now, was there anybody there when he did this? A. Anna Bell had gone to the store."

Anna Bell Haston, sister to Maxine, and who was fifteen years of age, was called as a witness for the state in this case, and she testified:

"Q. Well, do you recall a time during last winter, during the month of December, when your father sent you to the store? A. Yes.

"Q. Tell the jury about that. A. I went to the store to get some light bread, and when I came back, I got halfway, I heard someone scream, and I ran to the house. I thought maybe she had hurt herself, and when I got to the house it was her, and he was holding her on the bed. I looked in the window, and I tried to open the door, and I could not. That is all I know."

Counts 5 and 6 charge the crime of assault with the intent to commit rape on Helen Garrett, the daughter of defendant, on or about July 1, 1942, and the crime of assault with intent to commit incest on said Helen Garrett on or about July 1, 1942. Helen Garrett testified that she was sixteen years of age. On the charge of assault with intent to commit these crimes prosecuting witness testified as follows:

"Q. Now, Helen, just tell the jury what, if anything, occurred about the first day of July, 1942, when you were riding in an automobile with your father down in the neighborhood of Brooks Ranch south of Eloy. Just turn around and tell the jury. A. Daddy wanted me to learn how to drive the car. I knew it was only a way to get me out away from Mother. I went ahead because I knew he would give me a beating if I didn't. And we got about half-way out the main highway. He took a short cut. He started in in the car.

"Q. What did he do? Now, tell the jury what he did. A. He pulled my dress off and wanted me to pull my panties off, but I would not do it. I skidded over on the side of the car as far away from him as I could. I kept asking him to leave me alone, but he would not, and he kept on begging me. He stopped the car and made me take the wheel, and you know what he did.

"Q. Just tell the jury what he did. A. And we went on down over the bridge from Picacho, and he said if I would let him penetrate me, and if I got pregnant he would make sure that I was treated right, and he would give me five dollars for letting him penetrate me."

We find nothing incredible in the testimony given by this witness. It is a case for the jury to determine. As to counts 3 and 4 charged against this defendant, the competency of this child to testify rested in the discretion of the trial court. This statement is sustained by the case of State v. Guldin, supra.

The judgment is affirmed.

LaPRADE and MORGAN, JJ., concurring.