[Civil No. 1290.    Filed April 21, 1913.]

[131 Pac. 668.]

GEO. W. HULL, Appellant, v. JOE LARSON, Appellee.

1. APPEAL AND ERROR—RECORD—TIME FOR FILING IN APPELLATE COURT. Where a motion for a new trial was denied on August 5th, the transcript of the reporter's notes filed with the clerk of the trial court and served on the attorney for appellee on October 3d, the reporter's transcript presented to the trial judge October 23d, certified by him as correct October 25th, and the record filed in the office of the clerk of the supreme court on November 22d, there was a strict compliance with the statutes and rules of the court governing appeals.

2. APPEAL AND ERROR—BRIEFS—TIME FOR SERVICE ON OPPOSITE PARTY. Under the express provisions of supreme court, rule 4, subdivision 5 (126 Pac. x), as amended, appellant's brief is timely served on

appellee's attorney if served within thirty days after the record is filed in the supreme court.

3. APPEAL AND ERROR—REVIEW—QUESTIONS OF FACT.—An appellate court will not grant a new trial on the ground that the verdict is contrary to the evidence or not supported by the evidence, when the evidence is conflicting, or when there is any substantial evidence to support the verdict.

4. NEW TRIAL — AFFIDAVITS OF JURORS — IMPEACHMENT OF VERDICT — "QUOTIENT VERDICT."—The affidavit of a juror could not be received to show that the verdict in a civil case was a "quotient verdict," arrived at by adding the amount which each juror considered proper and dividing by the number of jurors, since there is no statutory provision authorizing the receipt of jurors' affidavits to prove misconduct of the jury in civil cases as there is in criminal cases, and therefore the common law rule prevails.

APPEAL from a judgment of the Superior Court of the County of Yavapai. Frank O. Smith, Judge. Affirmed.

The facts are stated in the opinion.

Mr. Robert E. Morrison, for Appellant.

Mr. P. W. O'Sullivan, Mr. Joseph H. Morgan and Mr. Carl M. Heim, for Appellee.

O'CONNOR, J.—This is an action brought by Joe Larson, as plaintiff, appellee herein, against Geo. W. Hull, defendant, appellant herein, in the superior court of Yavapai county, for damages for personal injuries alleged to have been inflicted upon Larson by Hull by striking Larson under the eye with a cane with great force and violence, inflicting a very dangerous wound and breaking a blood vessel and causing permanent injury to Larson's face and eye. Plaintiff alleged that he had expended the sum of $37 for medical and surgical treatment on account of said injury, and that, being a practical miner, his services were reasonably worth five dollars per day, and that by reason of said injury he was unable to work for a period of at least thirty days; and prayed for judgment against Hull for $2,500 general damages, $37 paid out for medical and surgical care, and $150 for thirty days' loss of time occasioned by said injury. The case was tried by a jury of six, by agreement of counsel, and a verdict was

rendered in favor of plaintiff, fixing his damages at the sum of $472.35. Motion for a new trial was overruled and judg-·ment rendered. From which order and judgment defendant appeals.

Appellee moves this court to dismiss this appeal on the grounds: First. That the appellant failed to file, within thirty days after the record of the case in the superior court was completed and the appeal perfected, the record of said case in the supreme court of Arizona. Second. That the appellant failed to serve upon the appellee, within thirty days after the appeal was perfected and the statement of facts made a part of the record, a copy of his brief.

The record discloses: That the motion for a new trial was denied in the court below on the fifth day of August, 1912, and on the third day of October, 1912, appellant filed with the clerk of the superior court of Yavapai county a transcript of the reporter's notes and served upon the attorney for appellee herein notice of the filing thereof. That on the twenty-third day of October, 1912, the reporter's transcript was presented to the trial judge, and on the twenty-fifth day of October, 1912, the trial judge certified to the correctness of the said transcript and on the same day filed the transcript in the office of the clerk of the superior court. That on the twenty-second day of November, 1912, the record in this case was filed in the office of the clerk of the supreme court. On the 4th day of December, 1912, the brief of the appellant was served on counsel for appellee and the requisite number of copies filed in the supreme court on the fifth day of December, 1912. This is a strict compliance with the statutes and with the rules of this court governing appeals and writs of error. Subdivision 5 of rule 4 of the supreme court (126 Pac. x) as amended, provides that "within thirty days next after the record in the cause has been filed in the supreme court, the appellant shall serve upon the attorney of the opposite party a copy of the brief," etc. The statute so provides, and the rule is in harmony with the statute. There being no merit in the motion to dismiss, said motion is therefore denied.

The first assignment of error questions the sufficiency of the evidence to support the judgment. An examination of the testimony in the case clearly shows sufficient evidence to support the verdict of the jury. It is a well-settled rule in

this state that the appellate court will not grant a new trial
on the ground that the verdict is contrary to the evidence or
is not supported by the evidence, when the evidence is con-
flicting or when there is any substantial evidence to support
the verdict. In *Goldman* v. *Sotelo,* 7 Ariz. 23, 60 Pac. 696,
the court said: "The weight of the evidence and the credi-
bility of the witnesses were matters peculiarly for the con-
sideration of the jury, and for the lower court upon the mo-
tion for a new trial." See, also, *United States* v. *Copper
Queen Min. Co.,* 7 Ariz. 80, 60 Pac. 885; *McGowan* v. *Sulli-
van,* 5 Ariz. 334, 52 Pac. 986; *Old Dominion etc.* v. *Andrews,*
6 Ariz. 205, 56 Pac. 969.

The only remaining assignment of error is that the verdict
of the jury was arrived at by chance and lot and is what is
known as a "quotient verdict." It appears from the affidavit
of W. H. Bannister, one of the jurors who tried the case, that,
when he and his fellow-jurors retired to the jury-room to
deliberate upon their verdict, it was agreed that each juror
should write down the amount which he considered was a
proper verdict in favor of plaintiff, and that the amounts so
set down should be added together and divided by six, the case
being tried by a jury of six, and that the result should be
the verdict in the case. That after such agreement each
juror wrote down the amount which he considered should be
the verdict, and that amount was thereafter added together,
divided by six, and the result was the sum of $472.35, and that
the verdict returned by said jurors was the sum of $472.35
in favor of the plaintiff and against the defendant. The ques-
tion presented to us is whether or not the affidavit of the
juror Bannister should be received as evidence of the alleged
misconduct of the jury.

From very early times it has been nearly universally held
that, in the absence of a statute permitting it, the affidavit of
a juror will not be received to impeach the verdict. "Noth-
ing is better settled as a general proposition than that the
affidavits of jurors are not admissible to impeach their find-
ing." Thomp. & M. Jur., sec. 414. And, quoting from the
same authority: "Upon the ground of public policy, the courts
have almost universally agreed upon the rule that no affidavit,
deposition, or other sworn statement of a juror will be received
to impeach the verdict, or to explain it, . . . or that they

agreed on their verdict by average, or by lot." Thomp. & M. Jur., sec. 440, citing many cases.

The Penal Code of Arizona, paragraph 988, subdivision 14, provides that the voluntary affidavit of a juror shall be competent to prove any misconduct of the jury or to sustain the verdict, but there is no such provision contained in our Code of Civil Procedure for civil cases, and we are therefore bound by the common-law rule.

Counsel for appellant contends that the proposition that a juror would be heard to impeach his verdict is sustained by the English cases, but an examination of the English authorities fails to support his contention. In speaking of the admission of affidavits of jurors to impeach the verdict, Lord Mansfield, C. J., in an early case, said: "It is singular, indeed, that almost the only evidence of which the case admits should be shut out; but, considering the arts which might be used if a contrary rule were to prevail, we think it necessary to exclude such evidence. If it were understood to be the law that a juryman might set aside a verdict by such evidence, it might sometimes happen that a juryman, being a friend of one of the parties, and not being able to bring over his companions to his opinion, might propose a decision by lot, with the view afterward to set aside the verdict by his own affidavit if the decision should be against him." *Owen* v. *Warburton,* 1 Bos. & P. N. R. 326, with a long line of English cases quoting this decision.

In 29 Cyc. 987, we find the rule as follows: "In most jurisdictions, in the absence of statutes on the subject, the affidavits of jurors will not be received to show that the verdict is a quotient or chance verdict"—citing cases from many states in support of the rule.

In *Dana* v. *Tucker,* 4 Johns. (N. Y.) 487, where the affidavits of two jurors were read to show "that the jurors agreed that each of them should mark down such sum as he thought fit to find, and the sum total divided by twelve, the quotient should be the verdict, and that the verdict was so ascertained," the court said: "The better opinion is, and such is the rule adopted by the court, that the affidavits of jurors are not to be received to impeach a verdict."

In *Moses* v. *Central Park, N. & E. Ry. Co.,* 3 Misc. Rep. (N. Y.) 322, 23 N. Y. Supp. 23, where a motion to set aside

the verdict was made, "because a 'quotient' verdict, that is, a verdict rendered upon an agreement for one-twelfth of the aggregate amount of the several estimates by the jurors," it is said, " 'the rule is well established, and at this day rests upon well-understood reasons of public policy as connected with the administration of justice, that the court will not receive the affidavits of jurors to prove misconduct on their part, or any act done by them which could tend to impeach or overthrow their verdict.' Allen, J., in *Dalrymple* v. *Williams*, 63 N. Y. 361, 363, [20 Am. Rep. 544], (and other cases on this point). . . . . The reasons for the exclusion of evidence by jurors to impugn their verdict are obvious and unanswerable, namely: First, because it would tend to defeat their own solemn acts under oath, secondly, because its admission would open a door to tamper with jurymen after they had given their verdict, and, thirdly, because it would be the means in the hands of a dissatisfied juror to destroy a verdict at any time after he had assented to it."

In *Boston etc. Ry. Co.* v. *Dana,* 1 Gray (Mass.), 83, 105, the rule is stated, as follows: "The only remaining question arises on the motion for a new trial founded on the alleged misconduct of the jury in making up their verdict. Without considering the question, whether the matter stated in the affidavit of one of the jurors, if properly proved, would be deemed sufficient cause for invalidating a verdict and granting a new trial, it is only necessary to say, that there is no competent evidence offered to sustain the motion in the present case. It has been often determined in this court, that the affidavits of jurors cannot be received for the purpose of proving misconduct in the jury-room. *Dorr* v. *Fenno,* 12 Pick. [Mass.] 525; *Murdock* v. *Sumner,* 22 Pick. [Mass.] 156."

In the following cases affidavits and testimony of jurors were sought to be introduced in aid of a motion for a new trial, to show that the verdict was found and returned in pursuance of an agreement in advance to be bound by a quotient or chance verdict, and were refused: *Montgomery St. Ry. Co.* v. *Mason,* 133 Ala. 508, 32 South. 261, 268; *Pleasants* v. *Heard,* 15 Ark. 407, cited and approved in *Ward* v. *Blackwood,* 48 Ark. 396, 3 S. W. 628; *City of Battle Creek* v. *Haak,* 139 Mich. 514, 102 N. W. 1005, 1008; *St. Martin* v. *Desnoyer,* 1 Minn.

156 (Gil. 131), 61 Am. Dec. 494, 496, 497; *Clark* v. *Manchester,* 64 N. H. 471, 13 Atl. 867, 869; *Cline* v. *Broy,* 1 Or. 90; *Stull* v. *Stull,* 197 Pa. 243, 47 Atl. 240; *Phillips* v. *Town of Scales Mound,* 195 Ill. 353, 63 N. E. 180; *Luft* v. *Lingane,* 17 R. I. 420, 22 Atl. 942; *International etc.* v. *Gordon,* 72 Tex. 44, 52, 11 S. W. 1033; *Carpenter* v. *Willey,* 65 Vt. 168, 26 Atl. 488; *Purcell* v. *Southern Ry. Co.,* 119 N. C. 728, 26 S. E. 161, 162; *Turner* v. *Tuolumne County W. Co.,* 25 Cal. 398; *Boyce* v. *California Stage Co.,* 25 Cal. 460.

If it is considered advisable in the furtherance of justice that the verdicts of juries may be impeached by the voluntary affidavits of the individual jurors, the remedy must be provided by the law-making power and not the courts. It is the duty of this court to administer the law as we find it.

There being no error in the record and the case having been fairly tried and the verdict of the jury not being excessive, the judgment and order of the lower court are affirmed.

FRANKLIN, C. J., and CUNNINGHAM, J., concur.

N. B.—Judge ROSS being disqualified and announcing his disqualification in open court, the remaining judges, under section 3 of article 6 of the constitution, called in Hon. J. E. O'CONNOR, Judge of the superior court of the state of Arizona, in and for the county of Pinal, to sit with them in the hearing of this cause.

Application for rehearing denied.

---

NOTE.—As to jurors' affidavits or statements in support of applications for new trial, see note in 12 Am. Dec. 142; and see note in Ann. Cas. 1912A, 1205.

As to quotient or chance verdicts, see notes in 2 Am. Dec. 38; 134 Am. St. Rep. 1061.